UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Dennis D. Linehan, | Case No. 0:18-cv-03483-WMW-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Nancy Johnston, Emily Johnson Piper, Jason J. Defibaugh, Brian S. Ninneman, Andrea L. Rimode, Corinne Hoadley, Terry Kneisel, Darlene L. Harris, Justin L. Joslin, and Randy Gordon, | |
| Defendants. | |

This matter is before the Court on the Defendants' Motion to Dismiss Plaintiff's Complaint. [ECF No. 18.] Dennis Linehan is civilly committed to the Minnesota Sex Offender Program ("MSOP"), and he is currently in custody at MSOP's Moose Lake facility. The Defendants in this case are MSOP employees and other MSOP officials. Mr. Linehan's Complaint, filed under 42 U.S.C. § 1983, generally alleges that the Defendants violated several of his federal constitutional rights in connection with their handling of Behavioral Expectations Reports ("Discipline Reports" or "BERs") related to Mr. Linehan's conduct at the MSOP facility. For the reasons that follow, the Court concludes that the motion to dismiss should be granted and this matter should be dismissed with prejudice.

### I.   Background

Mr. Linehan was committed to MSOP in 1995 as an individual with a sexually psychopathic personality. [Pl.'s Add. at 2 & n.1, ECF No. 10.] In this case, his allegations address two Discipline Reports he received at the MSOP facility: (a) #20181109-0004 (the "0004 Report"); and (b) #20180726-0008 (the "0008 Report"). [Compl. ¶ 4, ECF

1

No. 1.]¹ Both of these Discipline Reports alleged that Mr. Linehan was verbally abusive toward MSOP staff. [*Id.* ¶¶ 16–18.] In the 0004 Report, Mr. Linehan was accused of calling a staff member a "son of a bitch," and a record attached to the Complaint suggests that he signed a "Waiver of Hearing" form relating to this alleged violation of MSOP rules. [Attach. to Compl. at 1–3, ECF No. 1-1.] The 0008 Report indicates that Mr. Linehan yelled at and challenged another client during a group session. [*Id.* at 6.] He allegedly was disrespectful, called his peer names, made intimidating gestures, told a facilitator to shut up, and refused to leave the room as instructed. [*Id.*]

Mr. Linehan sued a list of defendants who he believes bear responsibility for the erroneous Discipline Reports. Jason J. Defibaugh is a registered nurse who authored the 0004 Report. [Compl. ¶ 5.] Brian S. Ninneman is an MSOP Unit Director for an MSOP unit, though not the one where Mr. Linehan resides, and he reviewed and approved the 0004 Report. [*Id.* ¶ 6.] Andrea L. Rimode allegedly signed a document indicating that Mr. Linehan had received a copy of the 0004 Report. [*Id.* ¶ 7.] Corrine Hoadley set forth the consequences that Mr. Linehan received as a result of the 0004 Report. [*Id.* ¶ 8.] Terry Kneisel, an Assistant Director at MSOP, signed the 0004 Report as the "Reviewing Official." [*Id.* ¶ 9.] Darlene Harris is an "MHA Clinician" who works at the MSOP facility and authored the 0008 Report. [*Id.* ¶ 10.] She also signed a document indicating that Mr. Linehan received a copy of the 0008 Report. [*Id.*] Justin Joslin reviewed and approved the 0008 BER. [*Id.* ¶ 11.] "Randy Gordon BEU Supervisor, singed an appeal made by [Mr. Linehan]." [*Id.* ¶ 24.]

Mr. Linehan alleges that Nancy Johnston is the CEO/Director of MSOP's Moose Lake facility and is responsible for issuing policies and procedures. [Compl. ¶¶ 13, 25.] He asserts that Emily Johnson Piper is the Commissioner of Human Services for

---

¹ After the Defendants filed their motion to dismiss, Mr. Linehan refiled his original Complaint. [ECF No. 26.] The docket shows that this subsequent filing is an "Amended Complaint," but the allegations in it are the same as those in the original pleading. The Court, therefore, analyzes the Defendants' motion to dismiss based on the allegations in the original Complaint.

Minnesota and is "responsible for the conditions, policies, procedures and the care of patients under the Department of Human Services…." [*Id.* ¶¶ 14, 26.]

As a result of the Discipline Reports, "it was determined [Mr. Linehan was] not vocationally ready and [he was] removed from vocational programming for a minimum of 30 days." [ECF No. 1-1 at 5; *see also* Pl.'s Resp. at 3 ("Mr. Linehan will also loss his work for pay job for 30 - ? days, in addition to any other consequences given.").] He was also placed on restricted status for a period of approximately eight days for each Discipline Report, but there are no allegations that indicate what this restricted status involved. [ECF No. 1-1 at 1 (referencing "Restriction Details" and indicating a restriction of "RS 3" for 8 days); *id.* at 6 (referencing RS 3 as the "Maximum RS" for the violations alleged).]

Mr. Linehan claims that the Defendants' handling of these Discipline Reports violated his Sixth Amendment rights, including the rights to a jury trial; to confront witnesses; to be informed of the accusations against him; and to have the assistance of counsel. [Compl. ¶¶ 28(a), 32.] He asserts that the Defendants also violated his Seventh Amendment right to trial by jury. [*Id.* ¶¶ 28(b), 33.] He also claims that the Defendants violated his Fourteenth Amendment right to due process of law. [*Id.* ¶¶ 28(c).] Finally, Mr. Linehan asserts that he was discriminated against by being denied "the same treatment as other[] civilly committed patients (mentally ill etc.)." [*Id.* ¶¶ 31, 35.] Mr. Linehan seeks a declaratory judgment, injunctive relief, and compensatory and punitive damages. [*Id.* at 6–9 (Relief Requested).]

**II.   Discussion**

The Defendants argue that Mr. Linehan's Complaint should be dismissed both pursuant to Federal Rule of Civil Procedure 12(b)(1) because the Court lacks jurisdiction over certain claims and pursuant to Rule 12(b)(6) because the pleading otherwise fails to state a claim for which relief can be granted. [Defs.' Mem., ECF No. 21.] As discussed below, the Court concludes that Mr. Linehan has failed to state a claim for violation of his constitutional rights and that it lacks jurisdiction over Mr. Linehan's official-capacity claims for damages.

3

### A. Failure to State a Claim

The Defendants argue that Mr. Linehan's Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) because he fails to articulate a claim on which relief could be granted. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly*, 500 U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and must construe all reasonable inferences in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). But the Court need not accept as true any wholly conclusory allegations, *Hanten v. School District of Riverview Gardens*, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled, *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

#### 1. Due Process Claims

The heart of Mr. Linehan's Complaint is a procedural due process claim concerning the actions taken by the Defendants in imposing disciplinary sanctions on him because of the Discipline Reports. The Defendants argue that this due process claim should be dismissed because: (1) Mr. Linehan has failed to plead facts demonstrating he was deprived of a protected liberty or property interest; (2) his pleading shows that he waived his procedural rights on one of the Discipline Reports; and (3) even if he adequately alleged a protected due process interest, the processes available to him to challenge application of MSOP's disciplinary rules are constitutionally sufficient. [Defs.' Mem. at 6–9 & 9 n.4; Defs.' Reply at 4–7, ECF No. 27.]

To determine whether Mr. Linehan has adequately alleged a procedural due process claim, the Court conducts a two-part inquiry. First, the Court considers whether he has alleged sufficient facts to establish the existence of a protected liberty or property

4

interest that has been interfered with by the government. Second, if a liberty or property interest is implicated, the Court asks whether Mr. Linehan has alleged facts showing that the procedures use to interfere with that interest were constitutionally insufficient. *See Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006).

### *Liberty Interest*

If Mr. Linehan lacks a constitutionally protected liberty or property interest, he cannot establish a due process violation. *See Forrester v. Bass*, 397 F.3d 1047, 1054 (8th Cir. 2005) ("Only if we find a protected interest do we examine whether the deprivation of the protected interest was done in accordance with due process."); *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc) ("[T]he possession of a protected life, liberty, or property interest is a condition precedent to any due process claim") (cleaned up). Neither the Supreme Court nor the Eighth Circuit has "determined the extent to which the Constitution affords liberty interests to indefinitely committed dangerous persons…." *Senty-Haugen*, 462 F.3d at 886. In the prison context, "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." *Sandin v. Conner*, 515 U.S. 472, 478 (1995) (citing *Meachum v. Fano*, 427 U.S. 215, 224 (1976)). The Eighth Circuit has similarly indicated that a person involuntarily civilly committed to state custody has considerably diminished liberty interests as compared to members of free society. *Senty-Haugen*, 462 F.3d at 886. Nevertheless, Mr. Linehan is entitled to "more considerate treatment and conditions of confinement" than a prison inmate. *Id.* (quoting *Youngblood v. Romeo*, 457 U.S. 307, 322 (1982)).

Mr. Linehan asserts that he has alleged a constitutionally protected liberty interest because MSOP detainees who have received Discipline Reports may face more restrictive settings in which to receive treatment or could be denied release or discharge from their commitment altogether as a result. [Compl. ¶ 27; *see* Pl.'s Resp., ECF No. 25.] For several reasons, the Court concludes that Mr. Linehan has not shown that a recognized and protected liberty interest was infringed upon here.

First, based on the allegations before the Court and what the Court can discern from Mr. Linehan's submissions, he was removed from a vocational program and

5

received a relatively brief placement on an unexplained "restricted status." In the prison context, deprivations that have constitutional significance are those that "work such major disruptions in a prisoner's environment and life that they present dramatic departures from the basic conditions and ordinary incidents of prison sentences." *Sorenson v. Minn. Dep't of Human Servs.*, 2015 WL 251720, at *16 (D. Minn. Jan. 20, 2015) (quoting *Moorman v. Thalacker*, 83 F.3d 970, 972 (9th Cir. 1996)). While placement of MSOP detainees in isolation likely involves deprivation of a liberty interest, Mr. Linehan's allegations do not suggest anything akin to that kind of departure from the ordinary incidents of MSOP life for a civilly committed person. Mr. Linehan's written filings in the record simply fail to include factual allegations that indicate what his removal from vocational programming and placement on restricted status involve in any meaningful way. Therefore, Mr. Linehan has not demonstrated that placement on restricted status for a brief period or removal from vocational programming caused a dramatic departure from the basic conditions and ordinary incidents of his civil commitment that a liberty interest is implicated. *See id.* at *16 (concluding that Mr. Sorenson failed to allege deprivation of a liberty interest based on placement on restriction status for 5 days).

Second, with respect to the allegation that a Discipline Report like those he received could play a role in preventing Mr. Linehan's placement in a less restrictive setting in which to receive sex-offender treatment, a person committed to MSOP does not have a liberty interest in receiving treatment in the least restrictive setting that is appropriate for his risk level. *Karsjens v. Piper*, 336 F. Supp. 3d 974, 985 (D. Minn. 2018). This means that even accepting as true the allegation that the 0004 and 0008 Discipline Reports could cause Mr. Linehan to remain in a more secure facility during his civil commitment, the Due Process Clause does not protect his desire to obtain a placement in a more permissive environment. As a result, Mr. Linehan does not plausibly allege a liberty interest that would support this procedural due process claim.

Third, the Court finds that Mr. Linehan's assertion that the Discipline Reports could one day play a role in the denial of a potential discharge from civil commitment is insufficiently pled and too speculative to establish a liberty interest in this case. With respect to the adequacy of his Complaint, the Court finds it lacking because Mr. Linehan

6

offers no factual allegations to support the assertion that the Discipline Reports are currently impacting consideration of his discharge from MSOP, or to infer that they are likely to have such an impact in the foreseeable future. With respect to the speculative nature of this claim, the Court notes that a person who is civilly committed to MSOP can be discharged pursuant to Minn. Stat. § 253D.31. This statute provides

> A person who is committed as a sexually dangerous person or a person with a sexual psychopathic personality shall not be discharged unless it appears to the satisfaction of the judicial appeal panel, after a hearing and recommendation by a majority of the special review board, that the committed person is capable of making an acceptable adjustment to open society, is no longer dangerous to the public, and is no longer in need of treatment and supervision.
>
> In determining whether a discharge shall be recommended, the special review board and judicial appeal panel shall consider whether specific conditions exist to provide a reasonable degree of protection to the public and to assist the committed person in adjusting to the community. If the desired conditions do not exist, the discharge shall not be granted.

*Id.* Mr. Linehan has failed to show through well-pled factual allegations that he meets the criteria for discharge, that he has the ability to adjust to open society, or that he is no longer in need of treatment; nor can he now demonstrate that one day these will be true. Even if the Discipline Reports are in some way relevant to a determination of his discharge from MSOP, his potential-discharge allegations are too attenuated and speculative to give rise to a constitutionally protected liberty interest. *Cf. Sandin v. Conner*, 515 U.S. 472, 487 (1995) (rejecting a prisoner's due process claim for failure to allege a liberty interest, in part, because "[t]he chance that a finding of misconduct will alter the balance is simply too attenuated to invoke the procedural guarantees of the Due Process Clause" though a misconduct record was a relevant consideration in Hawaii's decision to grant or deny parole).

For these reasons, the Court concludes that Mr. Linehan has failed to show the existence of a protected liberty interest, and as a result he fails to state a procedural due process claim. Finally, the Court notes that in the portion of their brief asserting that Mr. Linehan has failed to allege facts showing interference with a constitutionally protected liberty interest, the defendants assert that he lacks standing to contest the

7

Discipline Reports' effect on his potential discharge. The defendants do not explain how a lack of standing is coextensive with the nonexistence of a liberty interest. To the extent the defendants suggest that an MSOP detainee could never have standing to assert a procedural due process claim based on the role Behavioral Expectation Reports play in their ultimate discharge from involuntary confinement by the State of Minnesota, the Court declines to endorse such a broad proposition. Indeed, if it were adequately alleged that a detainee's discharge was denied and his civil commitment continued by the review board and judicial appeal panel because of Behavioral Expectation Reports, the effect on the duration of his confinement seems likely to implicate the Due Process Clause's protection of individual liberty.

### *Adequacy of Procedures*

Even if Mr. Linehan had sufficiently pled that a constitutionally protected liberty interest is implicated by the issuance of the contested Discipline Reports, he has not alleged facts showing that the procedures used to issue those reports were constitutionally inadequate. When a plaintiff demonstrates a protected liberty interest, the court considers "what process is due by balancing the specific interest that was affected, the likelihood that the … procedures used would result in an erroneous deprivation, and the [institutional] interest in providing the process that it did, including the administrative costs and burdens of providing additional process." *Senty-Haugen*, 462 F.3d at 886 (citing *Matthews v. Eldridge*, 424 U.S. 319, 332–35 (1976)). "The most important mechanisms for ensuring that due process has been provided are notice of the factual basis leading to a deprivation and a fair opportunity for rebuttal." *Id.* at 888. The Supreme Court has repeatedly noted that "the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Wolff v. McDonnell*, 418 U.S. 539, 560 (1974) (quoting *Cafeteria & Restaurant Workers v. McElroy*, 367 U.S. 886, 895 (1961)).

Mr. Linehan claims that the procedures used in connection with his Discipline Reports are insufficient because he was not given a jury trial, the right to call witnesses, the right to confrontation, or the right to counsel. [Compl. ¶¶ 27(a)–(d).] He asserts that the disciplinary process first involves the issuance of a BER. Second, an official offers to resolve the matter without a hearing, and if no deal is reached, a hearing is scheduled and

8

the individual faces potentially greater consequences for refusing to settle. Third, the person appears at a hearing where the charges are read and a panel asks the accused to discuss the incident. Afterward, the detainee leaves the room while the panel reaches a decision, which is communicated to the detainee when he re-enters the hearing room. If the BER is sustained, then the panel imposes disciplinary consequences. [Pl.'s Resp. at 2, ECF No. 25.] An individual has a right to appeal the decision. [*Id.* at 3.] These allegations concerning the disciplinary procedures are consistent with those laid out in the Client Behavioral Expectations, Minnesota Sex Offender Program, Policy Number 420-5010 for Major Violation Restrictions, https://mn.gov/dhs/assets/client-behavioral-expectations-420-5010_tcm1053-277238.pdf. These rules do not permit an MSOP detainee to have representation or to call witnesses. *Id.*, ¶¶ I.5(a)–(b).

Mr. Linehan's complaint demonstrates that he received the most important mechanisms for ensuring due process: notice and an opportunity to be heard. *See Senty-Haugen*, 462 F.3d at 888. His allegations expressly admit that he was given a notice of the factual basis for the 0004 Report and the 0008 Report. Although he complains that the absence of criminal-trial-like procedures was insufficient to protect his interests, the Court concludes otherwise because the balancing of interests required by *Matthews* weighs against finding heightened procedural protections were constitutionally required.

As recognized by the Eighth Circuit, curtailment of the liberty interests of MSOP detainees is constitutionally permissible. *Senty-Haugen*, 462 F.3d at 886. Looking first to the nature of the liberty interest that is allegedly implicated, the Eight Circuit has found that the possibility an MSOP detainee's time in isolated confinement "could lengthen his stay in the Offender Program is 'too attenuated' to invoke further due process protections." *Id.* at 887 (quoting *Sandin v. Conner*, 515 U.S. 472, 487 (1995)). As noted, the nature of the interests at stake here concern Mr. Linehan's ability to participate in vocational programming and to avoid the possibility that behavioral reports could implicate later decisions regarding his placement and potential discharge. It is difficult to imagine that the possible loss of such privileges would be entitled to any greater procedural guarantees than those required to place an MSOP detainee in isolation.

9

There are no allegations in the Complaint to suggest the procedures used by MSOP officials to issue and adjudicate Mr. Linehan's Discipline Reports create a constitutionally untenable risk of improper discipline. Of course the full procedural protections of a criminal trial could decrease the risk of erroneous deprivation, but such robust process is not required in the face of a modest sanction like those at issue here. "In the prison context … the Constitution does not require trial-like evidentiary standards.… [N]either confrontation nor cross-examination of witnesses are required to pass Constitutional muster." *Duwenhoegger v. King*, No. 10-cv-3695 (PJS/JSM), 2013 WL 646235, at *10 n.12 (D. Minn. Jan. 28, 2013) (analyzing Minnesota prisoner's procedural due process claim). Moreover, the Eighth Circuit has recognized that MSOP officials "have a substantial interest in providing efficient procedures to address security issues." *Senty-Haugen*, 462 F.3d at 887. Based on the allegations in the Complaint, application of the *Matthews* balancing test does not suggest additional procedural safeguards were required in this case.

Because the Complaint's allegations do not implicate an interest of significant weight, there is no suggestion the procedures employed are particularly likely to lead to erroneous deprivations, and the recognized need for MSOP to maintain security and order in its facility, the Court finds it unlikely that the use of criminal-trial-like procedures is constitutionally required to impose the kind of discipline for a violation of MSOP rules complained of here. Accordingly, the Court concludes that Mr. Linehan fails to state a plausible procedural due process claim.

### 2. Sixth Amendment Claim[2]

The Defendants argue that Mr. Linehan's claim that his Sixth Amendment rights were violated fails as a matter of law. [Defs.' Mem. at 5.] They assert that Mr. Linehan's

---

[2] Mr. Linehan's reference to the Sixth and Seventh Amendments appears under a "Denial of Due Process" heading in his Complaint. [Compl. ¶¶ 28(a)–(b).] It is possible Mr. Linehan is not asserting a stand-alone § 1983 claim under either of these amendments, but instead intended to say that the Fourteenth Amendment Due Process Clause entitles him to the same protections as the Sixth and Seventh Amendments provide. Nevertheless, in liberally construing the pleadings, the Court will assume that Mr. Linehan's reference to these amendments could be setting forth stand-alone claims.

10

allegations concerning the handling of the BERs do not implicate the Sixth Amendment because it only applies to criminal prosecutions. [*Id.*]

> The Sixth Amendment provides:
>
> In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury … and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

U.S. Const., amend. VI.

Courts have recognized there are meaningful differences between incarceration in prison and involuntary civil commitment, and civilly committed individuals may enjoy greater constitutional protections than prison inmates. However, courts have also looked to the prison context for analyzing committed individuals' constitutional claims. *See, e.g.*, *Beaulieu v. Ludeman*, 690 F.3d 1017, 1039 (8th Cir. 2012) (analyzing committed MSOP patients' First Amendment claims under standards developed in the prison setting); *Serna v. Goodno*, 567 F.3d 944, 948–49 (8th Cir. 2009) (comparing involuntarily committed persons to pretrial detainees and noting the Supreme Court's observation in *Youngberg v. Romeo*, 457 U.S. 307 (1982), that those convicted of criminal offenses may be subject to greater restrictions based on punitive purpose of incarceration); *Revels v. Vincenz*, 382 F.3d 870, 874 (8th Cir. 2004).

The Supreme Court has held that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Consistent with that observation, lower courts have concluded that detained persons do not have Sixth Amendment rights that apply in disciplinary proceedings in both the civil commitment and prison contexts. *See Sorenson v. Minn. Dep't of Human Servs.*, No. 14-cv-4193 (ADM/LIB), 2015 WL 251720, at *17 (D. Minn. Jan. 20, 2015) (rejecting an MSOP detainee's claim that his Sixth Amendment right to counsel was violated because he was not provided a lawyer during disciplinary proceedings); *see also Westbrook v. Koch*, No. 1:16cv480 (LMB/IDD), 2017 WL 2589963, at *3 (E.D. Va. June 13, 2017) (granting motion to dismiss inmate's Sixth Amendment claim because disciplinary proceeding was

not a criminal prosecution); *Thornton v. Bonneville*, No. 2:06-cv-224, 2007 WL 80883, at *4 (W.D. Mich. Jan. 8, 2007) (concluding that prisoner failed to state a Sixth Amendment claim because the disciplinary proceeding was not a criminal prosecution).

Because the Sixth Amendment applies to criminal prosecutions and the Discipline Reports at issue in this case are not criminal charges, the Court concludes that Mr. Linehan's Sixth Amendment claims fail as a matter of law. Accordingly, the Defendants' motion should be granted and his Sixth Amendment claim should be dismissed.

### 3. Seventh Amendment Claim

The Defendants assert that Mr. Linehan's Seventh Amendment claim should be dismissed because a person involuntarily committed to MSOP does not have a right to a jury trial in a disciplinary proceeding. [*See* Defs.' Mem. at 5–6.] The Seventh Amendment provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved….

U.S. Const., amend. VII. The Eighth Circuit has held that prison inmates have "no Seventh Amendment right to a jury trial in a prison disciplinary setting." *Buckley v. Barlow*, 997 F.2d 494, 495–96 (8th Cir. 1993) (citing *Wolff*, 416 U.S. at 563–72).

Here, based on the Eighth Circuit's conclusion in *Buckley*, the Court concludes that an involuntarily committed individual at MSOP does not have a Seventh Amendment right to a jury trial in connection with Behavioral Expectation Reports. The parties' briefing and the Court's own research reveals no authority for the application of the Seventh Amendment right to a jury trial in this context. Accordingly, Mr. Linehan's Seventh Amendment claim should be dismissed.

### 4. Equal Protection Claims

A plaintiff asserting an equal-protection claim must allege facts to show that he has been treated differently than similarly situated individuals and that the disparate treatment is as a result of either the plaintiff's membership in a protected class or in violation of a fundamental right. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815

(8th Cir. 2008); *Bogren v. Minnesota*, 236 F.3d 399, 408 (8th Cir. 2000). In equal-protection analysis, courts focus on the challenged government action and the degree to which the groups are similarly situated for the purpose of that action. *Klinger v. Dep't of Corr.*, 31 F.3d 727, 731 (8th Cir. 1994).

Mr. Linehan asserts that he has been treated differently than other people who have been involuntarily civilly committed, such as others who are not sex offenders, but have who have been found to be "mentally ill and dangerous." [Compl. ¶ 15.] His equal-protection claim should be dismissed because such an allegation fails to identify any similarly situated individuals. *Aune v. Ludeman*, 2010 WL 145276, at *9 (D. Minn. Jan. 8, 2010) ("As Defendants have noted, civilly committed sex offenders are not similarly situated to other civilly committed individuals housed in different Minnesota facilities.") (quoting the defendants' brief citing *Beaulieu*, 2008 WL 2498241, at *13) (cleaned up).

### 5. Qualified Immunity

Qualified immunity protects government officials from liability under § 1983 where their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002); *see also Baribeau v. City of Minneapolis*, 596 F.3d 465, 473 (8th Cir. 2010). The Court applies the doctrine of qualified immunity in a manner that "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (quoting *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)). Because the Court has found here that Mr. Linehan has failed to state any substantive claim, it need not reach the question whether the Defendants allegedly violated his clearly established statutory or constitutional rights. Nevertheless, Mr. Linehan has not cited, and this Court has not located any legal precedent that would have put the Defendants on notice that their handling of the BERs in this case were clearly unconstitutional.

### B. Subject Matter Jurisdiction

The Defendants also argue that they are entitled to Eleventh Amendment immunity for all of Mr. Linehan's official-capacity claims for damages, and as a result, the Court lacks subject-matter jurisdiction over those claims. [Defs.' Mem. at 12–14.] Because the Court has concluded above that Mr. Linehan has failed to state a claim, this issue need not be reached to dispose of the motion to dismiss. However, if the District

13

Court disagrees with the Court's assessment above, the following analysis describes an alternative conclusion concerning Mr. Linehan's official-capacity claims for damages.

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a claim for lack of subject-matter jurisdiction. Sovereign immunity implicates the Court's subject-matter jurisdiction, and where it applies, "the proper remedy is dismissal without prejudice." *Becerra v. Fabian*, No. 08-cv-5511 (JMR/JJG), 2009 WL 799609, at *5 (D. Minn. Mar. 24, 2009). The Defendants' jurisdictional motion is based solely on the allegations in the Complaint, raising a facial challenge. *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). When assessing a facial challenge to jurisdiction, the factual allegations in the Complaint that concern subject-matter jurisdiction are presumed to be true. *Id.*; *see also Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990).

"[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office…. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment provides states immunity from suits brought in federal courts. *DeGidio v. Perpich*, 612 F. Supp. 1383, 1388 (D. Minn. 1985) (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984)). Although § 1983 allows a suit against an individual state official acting under color of state law, the statute does not permit a plaintiff to recover damages from the state. *Murphy v. State of Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997) ("[The] § 1983 damages claims against the seven individual defendants acting in their official capacities are … barred … by the Eleventh Amendment….").

In the caption of his Complaint, Mr. Linehan indicates that the defendants are sued in their individual and official capacities. He also seeks relief in the form of monetary damages. Because official-capacity claims against Minnesota officials are no different from claims against the State of Minnesota and sovereign immunity protects the State from claims for damages, the Court concludes that it lacks subject-matter jurisdiction over such claims. These claims should be dismissed without prejudice pursuant to Fed. R. Civ. P. 12(b)(1).

Official-capacity claims against a state official for prospective injunctive relief are not subject to dismissal under the Eleventh Amendment. *Will*, 491 U.S. at 71 n.10; *Murphy*, 127 F.3d at 754 ("State officials acting in their official capacities are § 1983 'persons' when sued for prospective relief, and the Eleventh Amendment does not bar such relief."). Mr. Linehan's Complaint includes requests for prospective injunctive relief. The Court does not recommend dismissal of such claims for lack of jurisdiction.

14

However, because the Court concludes above that Mr. Linehan has failed to plausibly allege that the Defendants violated his constitutional rights, his requests for prospective relief should be dismissed as well.

### III.  Recommendation

For the reasons stated above, **IT IS HEREBY RECOMMENEDED THAT:**

1. The Defendants' Motion to Dismiss Plaintiff's Complaint **[ECF No. 18]** be **GRANTED**; and

2. This matter be **DISMISSED WITH PREJUDICE**.

Date: November 26, 2019

 *s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

### NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.